## WARNER v. WOOD et al.

(Circuit Court of Appeals, Second Circuit. November 11, 1912.)

### No. 80.

1. SPECIFIC PERFORMANCE (§ 121*)—JOINT ADVENTURE—CONTRACT—EVIDENCE.
   In a suit for specific performance and an accounting pursuant to an alleged contract, evidence *held* to warrant a finding of the making of a contract by which complainant and defendant W. became jointly interested in the exploitation of certain mining properties, and were entitled to share in the profits thereof in specified proportions.
   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 387–395; Dec. Dig. § 121.*]

2. SPECIFIC PERFORMANCE (§ 106*)—CONTRACT—PARTIES.
   Complainant and defendant W. contracted to use their joint efforts to exploit certain mining properties and to divide the profits in specified proportions. W. thereafter procured a conveyance of the properties to a corporation formed to take them over, and caused the stock to which he was entitled to be issued in the name of M., who held for W.'s benefit. *Held* that, W. having repudiated his contract with complainant, and M. having turned over the shares to W. after suit brought by complainant to compel specific performance of the contract, with notice of complainant's claim, M. was a proper party to the suit and liable to account for such stock.
   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 342–351; Dec. Dig. § 106.*
   Persons entitled to enforce specific performance, see note to Lawyer v. Post, 47 C. C. A. 493.]

Appeal from the District Court of the United States for the Southern District of New York; John R. Hazel, Judge.

Suit by Robert L. Warner against Sidney B. Wood and another for specific performance of contracts alleged to have been entered into between complainant and defendant Wood with reference to the disposition of certain mining properties and an interest in an individual contract with one Quenner. Judgment for defendants, and plaintiff appeals. Affirmed.

Facts appear in the opinion filed in the District Court, which is as follows:

This is an action in equity to enforce the specific performance of a contract entered into by plaintiff and defendant Wood in accordance with which certain mining properties situated in the district of Altar, Mexico, and a so-called Quenner patent for crushing rock and cement were to be acquired, and then transferred and sold. The plaintiff claims that on January 17, 1910, an oral agreement was entered into by which he and the said defendant became jointly interested in the enterprise, and that the plaintiff was to procure, or to assist in procuring, others to finance the project; that the defendant Wood had previously secured leases of the mining properties and option upon the Quenner patent, and it was agreed that, when such properties were syndicated or sold, the profits realized from their joint

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

efforts should be divided between them in the proportion of five-eighths to Wood, and three-eighths to the plaintiff. The said defendant in his answer denies making an oral contract for division of profits on the basis stated, and claims that the relation of the parties is substantially set out in a later agreement, dated January 27, 1910, which was in writing, and which was afterwards voluntarily abandoned or rescinded by the plaintiff; that thereupon, by his exclusive efforts, he acquired the said properties, and sold the same to an organization formed for the purpose—the American Ore Milling Company. These defenses make necessary an examination of the evidence for the purpose of determining, first, whether there was an agreement by which the parties became jointly interested in the enterprise and entitled to share in the profits in the proportion stated, and, second, whether the agreement was subsequently terminated by anything the plaintiff said or did.

[1] The plaintiff, who is a banker residing in Boston, Mass., testified in substance that he interested himself in the exploitation and development of the properties in question at the request of Wood, who stated that the transaction was one of great magnitude, which he could not handle without plaintiff's help, and that, if the plaintiff would co-operate with him in properly exploiting the project, the gains and profits would be shared between them in the manner above specified; that he assented to the proposition, and soon afterwards secured the services of lawyers to prepare or outline the proposed subscription agreements for the formation of a syndicate, in which he and Wood were referred to as the owners of the property. Subsequently he introduced Wood to Mr. Winsor et al., financiers living in Boston, with whom negotiations culminated in the contract, Exhibit B, dated January 27, 1910. On said date plaintiff and defendant Wood entered into an agreement in writing which contained the following clause:

"(3) Wood and Warner agree that in the event of said contract with Gaston, Winsor, and Sayles not being signed, or if, being signed, not being fully performed, or if it be partly performed by the contribution of $40,000 and the remaining amount provided for from Gaston, Winsor, and Sayles be not subscribed, every reasonable effort will be made by both parties to dispose of the interest not taken by Gaston, Winsor, and Sayles to other parties upon the same or equally advantageous basis. If, however, after the lapse of six months from the date upon which Gaston, Winsor, and Sayles must determine whether to advance the remaining amount to bring their contribution up to $300,000, it is not possible to make an arrangement to get the amount not contributed by them from other parties upon a basis equally advantageous, then it is agreed that a new distribution shall be made of the interest which Wood and Warner have in the corporation as it stands, or any subsequent corporation that may be formed, to the end that Warner shall have one-sixth of their joint interest and Wood five-sixths of their joint interest.

"[Signed] Sidney B. Wood,
"R. L. Warner,
"William E. Hall."

The evidence shows that this clause was included in settlement of a dispute which had arisen as to plaintiff's continued interest in the enterprise in the event of failure of the parties mentioned in Exhibit B to complete their contract. In February, 1910, plaintiff and defendant Wood, together with Winsor, pursuant to prearrangement, met at Nogales, Ariz., to examine the mining properties and Quenner patent, and to complete the necessary details of conveyance, should it be determined by Winsor to buy the properties. After such examination, Mr. Winsor, representing prospective purchasers, notified the parties to this action that he had concluded not to perform, and, claiming that the value of the properties had been exaggerated, declined to make the down payment specified in the contract. The defendant Wood and the witness Quenner testified that the plaintiff, at this time, stated that he would have nothing further to do with the transaction, and that in a few days he departed from the Altar district. It is shown that at about this time Wood secretly entered into negotiations with other parties and succeeded in procuring from various persons living in Arizona, and from members of his own family, the necessary amount of money to enable him to make good the op-

tion to acquire the Quenner invention, which would have expired on March 24th, ensuing. The property rights and the Quenner invention were subsequently assigned by Wood to the American Ore Milling Company, as already stated.

On the 13th day of August, 1910, at the request of counsel for the plaintiff, at Stamford, Conn., Wood signed the following instrument:

"Stamford, Aug. 13/10.

"I agree to turn over to Robert L. Warner ⅜ of all stock of Am. Ore Milling Co. rec'd by me or for me and ⅜ of any other profits I have rec'd from the 'Quenner matter' provided only that he is to pay me ⅜ of the cash I have pd. the Am. Ore Milling Co. for stock, provided also that Warner shall give up any note or claim now held by him against me for his own personal expenses incurred in the Winsor investigation. Stock purchased by members of my family not to be treated as partnership stock.

"[Signed]  Sidney B. Wood.  [L. S.]"

To which on the 16th of August 1910, he received the following reply:

"Warner, Tucker & Co.,
"Investment Securities, 85 Devonshire Street.

"Boston, Aug. 16, 1910.

"Mr. Sidney B. Wood, % Messrs. Stover & Hall, 60 Wall Street, New York City—Dear Mr. Wood: Mr. Guthrie has informed me of his conversation with you at Stamford, Conn., on Saturday last, and of your agreement to turn over to me three-eighths of stock and other partnership profits and rights you have received from the Quenner matter, as per our original agreements, provided that I am to pay to you three-eighths of the cash you have paid, which I understand from Mr. Guthrie is within one thousand dollars, being on account of such legitimate personal expenses as would manifestly have met with my approval for joint account under our agreement, if I had been consulted about the same at the time when they were incurred, and further provided that I shall give up so much of your note for $670.00 as may represent my own similar personal expenses. I understand that you are to see Mr. Ingalls Thursday or Friday of this week, and arrange for a full accounting, to be had as promptly as possible. The settlement above indicated is entirely satisfactory to me, and I am glad to accept it and settle the matter on a friendly basis. I am mailing a carbon of this letter to Messrs. Holter, Ingalls & Guthrie.

"Very truly yours,                    R. L. Warner."

The defendant answered as follows:

"August 22, 1910.

"Robert L. Warner, Esq., 85 Devonshire Street, Boston, Mass.—Dear Sir: Referring to my offer of August 13th, in which I endeavored to settle our differences by the delivery to you of three-eighths of my interest in the stock of the American Ore Milling Company, and your reply to the same dated August 16, 1910, I do not consider that you have accepted that offer on the terms in which it was made, and therefore there has been no acceptance, and I beg leave to withdraw my offer of August 13th.

"Very truly yours,                    Sidney B. Wood."

From such testimony as has been considered important the intention of the parties, either to engage in a joint enterprise or in a limited undertaking, must be determined. It is insisted that there was no meeting of the minds before the written agreement of January 27th which was wholly based on the Winsor contract; that all prior arrangements and oral agreements as to a joint undertaking and division of profits merged; that when Winsor refused to complete, the plaintiff's interest in the undertaking ceased as evidenced by his declaration that he would have nothing further to do with the matter, and by the settlement of the expenses incurred by the plaintiff on the trip. But a careful examination of the evidence and the entire transaction satisfies me that in the beginning it was understood and agreed that the parties to the action should jointly become interested in the enterprise, each to perform a part in its exploitation and development, the plaintiff to interest capital

in the scheme, and the defendant Wood to contribute his options and services. If it were not for the memorandum of August 13th, I should unhesitatingly decide that the plaintiff had failed in proving his cause of action; but such memorandum, in my judgment, persuasively supports the claim of a joint venture and division of profits, notwithstanding paragraph 3 of the contract of January 27th, which, in my opinion, is not inconsistent therewith. The limitation therein expressed provided in substance that, if the Winsor agreement was not performed, plaintiff and defendant Wood would endeavor to interest others upon a basis equally advantageous; but if, after the expiration of six months from the specified time, the entire amount was not contributed, then a new division of the profits would be made by which the plaintiff would receive one-sixth and Wood five-sixths thereof.

Importance is attached to plaintiff's declaration at Nogales that he wanted nothing further to do with the matter. Such declaration, however, is fairly susceptible of various inferences. It is not improbable that it was made while in a mood of disappointment due to the failure of Winsor to complete the purchase. Nor do I draw an inference of an intention on the part of the plaintiff to abandon the joint enterprise because of the arrangement regarding the payment of his expenses. Such arrangements were at the suggestion of the defendant Wood, and not owing to plaintiff's desire to recede from the enterprise. It is not necessary to regard the memorandum of August 13th as a settlement. In the view taken, it is, however, an important item of testimony which, as already stated, persuasively corroborates the claim of a joint venture and division of profits on the basis hereinbefore stated. It is unnecessary to hold the contract valid as a sealed instrument under the laws of Connecticut, or to hold that Wood was bound by his promise, or that it was given for a valid consideration. That the plaintiff is entitled to an accounting is scarcely to be doubted. Jones v. Davis, 48 N. J. Eq. 493, 21 Atl. 1035; Harvey v. Sellers (C. C.) 115 Fed. 757. And while the defendant Wood may regard it as inequitable that he should be required to share profits with the plaintiff after he, by his unaided efforts and perseverance, succeeded in the enterprise, yet it is to be remembered that he voluntarily solicited plaintiff's assistance and entered into an arrangement with him, unconditioned save as to interest, for a joint venture to be carried on for their mutual benefit. If he had acted with less disingenuousness, it is not improbable that, in spite of the initial failure to acquire the properties under the Winsor agreement, the plaintiff would have continued to co-operate with him, and would doubtless have contributed the precise services that Wood believed in the beginning he was in a position to render; or if Wood had made disclosure of his intention to interest other parties a modification of the agreement would, perhaps, have resulted.

The defendant Wood's explanation that he executed the memorandum because of threatened suit, believing that such an action at the time might interfere with the finalities of the enterprise, is not entitled to much weight. He was not duped into signing the document. By education and training he knew the force of the admissions contained therein, and must abide the consequence thereof. In view, however, of plaintiff's failure to bring about a consummation of the Winsor contract, regardless of the goodness of his intentions, it is regrettable that a fair and reasonable readjustment as to the profits, if there were any, has not been made by the parties themselves proportionate to the actual services rendered; but this court is powerless under the evidence to fix any other standard for division of gains and profits than such as the parties themselves contemplated in their agreement. In the joint undertaking the proportionate share or interest of each was predetermined, and as the properties in question were sold within the period limited in clause 3 of the contract dated January 27, 1910, I am constrained to hold that plaintiff is entitled to an accounting as demanded in the bill.

[2] It remains only to consider whether the defendant Miller is a proper defendant. The evidence is that the stock issued by the American Ore Milling Company which the defendant Wood was entitled to receive from the transaction was issued in the name of the defendant Miller, who concededly held it for the benefit of Wood. In the answer it is admitted by Miller that he

received certain of the said shares of stock belonging to the defendant Wood, but that he has since turned the same over to him, and has not at present any of them in his possession; the transfer to Wood and others having been made after the beginning of this action. Inasmuch as he had notice of plaintiff's claim to an interest in the stock held by him in trust for Wood, he is a proper party defendant, and must account for such shares of stock. Hambleton v. Rhind, 84 Md. 456, 36 Atl. 597, 40 L. R. A. 216.

The case must be referred to a master for an accounting of the profits, money, and shares of stock received by the defendant Wood, either directly or by transference from Miller to him (or to any other person for his benefit), with costs.

So ordered.

M. L. Stover, of New York City, for appellants.
Holter, Ingalls & Guthrie, of New York City, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

PER CURIAM. We concur in the reasoning and conclusion of the District Judge, and think it unnecessary further to discuss the case, except to say that we find in the pencil memorandum, signed by both parties on January 18, 1910, a corroboration so strong of complainant's assertions as to the terms of the original contract of January 17, 1910, that we should reach the same conclusion that Judge Hazel has, even if the memorandum of August 13, 1910, were out of the case.

The decree is affirmed, with costs.